**WEYERHAEUSER COMPANY,**
Petitioner,

v.

**Virginia WASHINGTON and the Workers' Compensation Court,**
Respondents.

**No. 79183.**

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 8, 1992.

**540**

Jacque Jeffries Brawner, Brawner & Brawner, Oklahoma City, for petitioner.

Richard A. Bell, Norman, for respondents.

### MEMORANDUM OPINION

ADAMS, Presiding Judge:

■ Employer Weyerhaeuser Company asks us to vacate an order of the Workers' Compensation Court which awards permanent partial disability benefits to Claimant Virginia Washington for an occupational disease resulting in injury to her lungs and upper respiratory system. Weyerhaeuser contends Washington's medical evidence lacks probative value because her expert, while acknowledging her history of cigarette smoking, does not attempt to apportion the stated impairment between work-related and self-induced nonoccupational causes.[1]

Washington was employed by Weyerhaeuser for one year in 1972 and again from August, 1988 until February, 1990. Her duties as a crew person included operating various saws, vacuuming paint from boards and working on the S.I. line. Washington testified that during her last term of employment she was exposed to various chemicals and airborne particulates including formaldehyde, paint, sawdust, and asbestos. She only used a paper mask in the area where rejected boards were recycled. As a full-time employee she was exposed to these substances on almost a daily basis with February, 1990 as the approximate date of last exposure.

Washington denied any breathing problems prior to August 1988. She stated the fumes emitted from boards wet with paint gave her headaches, chest pain, and a burning nose. Sawdust caused her to have clogged nasal passages, a cough, and shortness of breath. At trial she testified that she still had breathing problems. She admitted she had smoked approximately three-fourth's pack of cigarettes for ten to twelve years.

Washington's medical evidence indicated she had a partial permanent impairment of twenty-five percent to her lungs and an additional five percent impairment to her upper respiratory system secondary to an occupational disease suffered as the result of her employment with Weyerhaeuser. The history taken by Washington's medical expert documented her admitted smoking of less than one package of filter cigarettes per day for eleven years. Weyerhaeuser's medical expert stated Washington had a normal respiratory system evaluation and had zero impairment.

The *Guides* provide that data on environmental exposures and use of tobacco are important factors when an examining physician is asked to give an opinion on apportionment between causes of a lung disorder. American Medical Association, *Guides to the Evaluation of Permanent Impairment*, 108 (3rd Ed.1988). The *Guides* define "apportionment" as:

> [T]he determination of the degree to which each of various occupational or nonoccupational factors has contributed to a particular impairment. For each alleged factor, two criteria must be met: (a) The alleged factor could have caused the impairment, which is a *medical* decision, and
> (b) in the particular case, the factor did cause the impairment, which is a *nonmedical* determination. (Emphasis in original.)

*Guides*, at 235.

■ Washington's medical expert does not attribute any part of Claimant's disabil-

1. Weyerhaeuser also argues in its brief that Washington's medical expert did not take a complete history from the claimant, omitting her treatment of a sinus condition and coughing problems which existed before her employment with Weyerhaeuser, and failed to include a smoking history consistent with that given to its medical expert. We note that no contemporaneous objection was made at trial on these grounds. We will not reverse for failure to follow 85 O.S.1991, Ch. 4, App., Rule 20 or the AMA *Guides* without an objection made in compliance with Rule 21 which states the specific grounds under 12 O.S.1991 § 2104. *Gaines v. Sun Refining & Marketing*, 790 P.2d 1073 (Okla.1990).

ity to her smoking of cigarettes, therefore, we must conclude that the examining physician did not believe smoking was a factor in causing her impairment. To the contrary, the expert testified Claimant's disabling occupational disease "is related to her work at Weyerhaeuser which is peculiar to or characteristic of her employment."

Washington denied any respiratory impairment prior to returning to Weyerhaeuser in 1988. Under those circumstances, Weyerhaeuser had the burden of proving not only a pre-existing impairment, but its extent. *H.F. Wilcox Oil & Gas Co. v. Fleming*, 163 Okl. 290, 22 P.2d 72 (1933). Weyerhaeuser presented no evidence, either through its expert or by cross-examination of Claimant's doctor, that Washington's voluntary use of cigarettes may have been a contributing factor in the impairment to her lungs and upper respiratory system.

We have reviewed the evidence without weighing its credibility and have determined that it contains competent evidence upon which the court below based its decision. *Parks v. Norman Mun. Hosp.*, 684 P.2d 548 (Okla.1984).

SUSTAINED.

GARRETT and JONES, JJ., concur.